IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ALICE MCINTARE
o/b/o J. R. H.                                                    PLAINTIFF

             v.                        Civil No. 08-3006

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Alice McIntare, brings this action on behalf of her son, J. R. H., seeking judicial

review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security

Administration (Commissioner), denying his application for child's supplemental security income

(SSI), benefits under Title XVI of the Social Security Act.

## I.  Background:

Plaintiff protectively filed an application for SSI on J. R. H.'s behalf on December 13, 2004,

alleging that J. R. H. became disabled on March 15, 1994, due to a learning disability and severe

headaches.  (Tr. 57).  An administrative hearing was held on January 19, 2007.  (Tr. 449-457, 458-

467).  Plaintiff was present and represented by council.

The Administrative Law Judge ("ALJ"), in a written decision dated May 2, 2007, found that

J. R. H.'s learning problems and migraines were severe impairments, but did not meet, medically

equal, or functionally equal any listed impairment.  (Tr. 16).  Further, he concluded that J. R. H. did

not have an extreme or marked limitation in any domain of functioning.  (Tr. 19-25).  The ALJ

determined that J. R. H. had no limitations in moving about and manipulating objects, caring for

yourself (self care), and health and physical well being, as well as less than marked limitations in

acquiring and using information, attending to and completing tasks, and interacting and relating to others.

On May 2, 2007, the Appeals Council declined to review this decision. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 1). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 8, 9).

## II. Standard of Review:

The court's review is limited to whether the decision of the Commissioner to deny benefits to the plaintiff is supported by substantial evidence on the record as a whole. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Pearles*, 402 U.S. 389, 401 (1971). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

In determining the plaintiff's claim, the ALJ followed the sequential evaluation process, set forth in 20 C.F.R. § 416.924. Under this most recent standard, a child must prove that she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(c)(i); 20 C.F.R. § 416.906.

When passing the law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in the House

conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

> The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996).

Consequently, under this evaluation process, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More specifically, a determination that a child is disabled requires the following three-step analysis. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *See id.* Second, the ALJ must consider whether the child has a severe impairment. *See* 20 C.F.R. § 416.924(c). A severe impairment is an impairment that is more than a slight abnormality. *See id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 416.924(c). Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings, will it constitute a disability within the meaning of the Act. *See* 20 C.F.R. § 416.924(d). Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. *See* 20 C.F.R. § 416.926a(b)(1). The six domains

are:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005).

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to an impairment in the Listings.  *See* 20 C.F.R. § 416.926a(d).  A marked limitation is defined as an impairment that is "more than moderate" and "less than extreme."  A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities.  *See* 20 C.F.R. § 416.926a(e)(2).  An extreme limitation is defined as "more than marked", and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities.  Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  *See* 20 C.F.R. § 416.926a(e)(3).

### III.  Discussion:

Of particular concern to the undersigned is the ALJ's determination that J. R. H. had less than marked limitations in the area of acquiring and using information.  In this area, Social Security Regulation 20 C.F.R. § 416.926a(e)(2) defines "marked" in part as, the Claimant having a medically determined "valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score."

On January 8, 2003, J. R. H. underwent a psychological evaluation with Dr. Byron Dickinson, Psy. D, at Marshall Elementary School.  (Tr. 179-188).  J. R. H. seemed to enjoy the challenges presented with several of the timed performance tasks.  He appeared to try very hard to do well on all activities presented to him.  However, his total language, written expression, and math reasoning skills were scored in the low average range, and J. R. H.'s basic reading skills, reading comprehension, total reading, spelling, total writing, global writing, word identification, word attack, word comprehension, passage comprehension, numerical operations, math quotient, total math skills, attention and concentration, and short-term verbal memory were borderline.  Weaknesses were noted  in fine motor coordination and/or drawing skills.  Dr. Dickinson indicated that a developmental delay was suspected in immediate information processing skills.  Interventions typical for children with attention problems were recommended, as were "hands on" and/or techniques utilizing tactile stimulation and flash cards.  (Tr. 179-188).

The record contains the results of only two academic achievement tests, in spite of the fact that J. R. H. was 12 years old and in the sixth grade at the time of the administrative hearing.  In March 2004, J. R. H.'s scores on the Arkansas Comprehensive Testing, Assessment, and Accountability Program indicated below basic skills in math and literacy.  (Tr. 120).

On April 15, 2004, J. R. H. scored below average on the Stanford Achievement Test in reading, math, language, study skills, social science, listening, using information, and thinking skills.  (Tr. 118).  He was noted to have little or no mastery of fundamental knowledge and skills in these areas.  (Tr. 119).

On February 1, 2005, a statement of parental participation and concerns completed by Searcy County School District indicated that J. R. H. did not read at grade level; had difficulty decoding complex words and comprehending long passages; did not know multiplication facts; used finger

counting to add and subtract; had difficulty computing answers for word problems; could not complete grade level math; and had difficulty writing paragraphs to compare and contrast. (Tr. 97-109).

On February 6, 2007, Ernest Taylor, J. R. H.'s special education teacher, completed a teacher questionnaire. (Tr. 166-173). He indicated that J. R. H. was in the sixth grade, but was presently learning fourth grade math, reading, and writing. Mr. Taylor reported a slight problem with J. R. H.'s ability to understand school and content vocabulary, read and/or comprehend written material, comprehend and do math problems, express ideas in written form, learn new material, recall and apply previously learned material, apply problem solving skills in class discussions, carry out multi-step instructions, complete class/homework assignments, complete work accurately without careless mistakes, work at a reasonable pace/finishing on time, make and keep friends, and express anger appropriately. He also noted an obvious problem with J. R. H.'s ability to organize his own things and school materials. (Tr. 166-173).

While we note recent psychiatric progress notes indicating that J. R. H.'s grades had improved with medication, we do not believe this necessarily means that his ability to acquire and use information has also significantly improved. (Tr. 428-443). As previously noted, although in the sixth grade, J. R. H. was only functioning within the fourth grade level in all major areas of academics. The fact that he is two grade levels behind is of the greatest significance to the undersigned.

Therefore, because the evidence indicates J. R. H. is suffering from some significant academic delays, we believe that remand is necessary to allow the ALJ to obtain additional evidence concerning J. R. H.'s ability to acquire and use information. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). On remand, the ALJ should request additional academic achievement test results from J. R. H.'s school to determine whether his below basic skills meet the definition of a marked impairment.

Likewise, we are concerned with the ALJ 's determination that J. R. H. has less than marked limitations in the area of interacting and relating to others.  The record is replete with notations that J. R. H. was suffering from behavioral problems to include abusive behavior.  (Tr. 334, 412, 415-419, 434-438).  In fact, he testified that he had recently broken his older brother's arm when he struck him with a walking cane.  (Tr. 452).  J. R. H.'s mother also testified regarding J. R. H.'s anger management problems and his withdrawn behavior.  (Tr. 439-443, 462).  His special education teacher also reported some problems with expressing anger and making and keeping friends. (Tr. 166-173).

We note that many of J. R. H.'s problems have improved with the implementation of a medication regimen.  However, the record does not indicate exactly how the medications have affected J. R. H.'s behavior.  As such, we believe remand is necessary to allow the ALJ to develop the record in this regard.  On remand, the ALJ  is directed to request additional information from J. R. H.'s treating psychiatrist and counselor(s) to determine how the implementation of medication therapy has impacted his behavioral issues.

**IV.  Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore the denial of benefits to J. R. H. is hereby reversed and this matter remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this <u>2nd</u> day of April 2009.

/s/ *J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE